# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| Obed Gomez Jr., *et al.*, on behalf of themselves and all others similarly situated, | **Case No. 4:23-cv-00333-BRW** |
| Plaintiffs, | |
| v. | |
| Centennial Bank d/b/a Happy State Bank, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION……………………………………………………………..  1

II.     CASE SUMMARY………………………………………………………….  1

    A.      The Data Breaches……………………………………………………...  1

    B.      Procedural Posture………………………………………………………...  2

III.    SUMMARY OF SETTLEMENT……………………………………………  4

    A.      Settlement Benefits……………………………………………………  4

        1.      Monetary Relief………………………………………………...  5

            a.      Documented Loss – Cash Payment A………………………………  5

            b.      Flat Cash Payment – Cash Payment B……………………………  5

            c.      2022 Subclass Payment – Cash Payment C…………………………  5

        2.      Equitable and Prospective Relief…………………………………………  6

        3.      Release……………………………………………………………  6

    B.      The Notice and Claim Process…………………………………………  6

        1.      Notice………………………………………………………………...  6

        2.      Claims………………………………………………………………...  7

        3.      Requests for Exclusion and Objections………………………………...  7

    C.      Fees, Costs and Service Awards…………………………………………  9

IV.     LEGAL AUTHORITY……………………………………………………….....  10

V.      LEGAL DISCUSSION……………………………………………………… 11

    A.      The Settlement Class Should be Preliminary Approved………………………...  11

        1.      The Proposed Class is sufficiently numerous……………………………… 13

        2.      Questions of law and fact are common to the Class……………………… 13

3.    Plaintiffs' claims and defenses are typical of the Class…………………… 14

4.    Plaintiffs and their counsel will provide fair and adequate representation for the Class………………………………………………… 15

5.    Because common issues predominate over individualized ones, class treatment is superior………………………………………………………... 16

B.    The Settlement Terms Warrant Approval…………………………………….. 17

1.    Class Representatives and Counsel have Adequately Represented the Class………………………………………………………………………... 19

2.    The Settlement is the product of good faith arms' length negotiations and is absent of any collusion………………………………………… 20

3.    The Settlement Agreement provides substantial relief to the Settlement Class particularly in light of the uncertainty of prevailing on the merits.. 20

4.    The proposed Settlement treats Settlement Class Members equitably….. 22

5.    Other factors considered by Eighth Circuit Courts weigh in favor of preliminary approval………………………………………………………... 23

C.    The Proposed Settlement Administrator will Provide Adequate Notice………... 24

VI.    CONCLUSION…………………………………………………………………… 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ................................... 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ........................... 12, 16, 17

*Baksh et al. v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y.) .................................... 21

*Blades v. Monsanto Co.,* 400 F.3d 562 (8th Cir. 2005) ................................................. 16

*Briles v. Turban,* No. 8:15CV241, 2016 WL 4094866 (D. Nebr. Aug. 1, 2016) ........................ 11

*Caligiuri v. Symantec Corp.*, 855 F.3d 865 (8th Cir. 2017) ........................................... 21

*Chacon et al, v. Nebraska Medicine,* No. 8:21-cv-00070 (Dist. Nebr.) ...................................... 21

*Chorosevic v. MetLife Choices*, 2007 WL 2159475 (E.D. Mo. July 26, 2007),
   *aff'd*, 600 F.3d 934 (8th Cir. 2010) ................................................................. 13

*Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003) ........................ 10, 18

*Cohn v. Nelson*, 375 F.Supp.2d 844 (E.D. Mo. 2005) ................................................. 10

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ......................................... 15

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) ........................................... 14

*Grunin v. Int'l House of Pancakes,* 513 F.2d 114 (8th Cir.1975) .................................... 10

*Hapka v. CareCentrix, Inc.*, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................ 16

*Harris v. Republic Airlines, Inc.,* No. 4-88-1076, 1991 WL 238992
   (D. Minn. Nov. 12, 1991) ......................................................................... 22

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315
   (N.D. Cal. Aug. 15, 2018) ........................................................................ 16

*In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR,
   2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................................................... 12

In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.,
   55 F.3d 768 (3d Cir. 1995) ........................................................................ 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .... 22

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 13, 17

*In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 7253765
    (D. Minn. Nov. 17, 2015) .................................................................................... 24

*In re Target*, 309 F.R.D. 482 (D. Minn. 2015) ....................................................... 13

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351
    (N.D. Ga. Aug. 23, 2016)................................................................................... 17

*In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (8th Cir. 2002)..................................... 21

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ............... 18, 19

*In re Xcel Energy, Inc., Sec. Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980
    (D. Minn. 2005) ................................................................................................. 21

Linquist v. Bowen, 633 F. Supp. 846 (W.D. Mo. 1986), aff'd, 813 F.2d 884 (8th Cir. 1987) ..... 15

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.,* 921 F.2d 1371 (8th Cir. 1990)............. 10

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).................................... 24

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)..................................... 14, 15, 19

*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir.1999) ............................................... 19

*Pollard v. Remington Arms Company, LLC,* 320 F.R.D. 198 (W.D. Mo. 2017)........................ 20

*Rentschler v. Carnahan*, 160 F.R.D. 114 (E.D. Mo. 1995) ............................................. 15

*Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) .......... 21

*Schoenbaum v. E. I. Dupont De Nemours Co.,* 2009 WL 4782082
    (E.D. Mo. Dec. 8, 2008)............................................................................ 10, 11, 18

*Smith v. Triad of Ala., LLC,* No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574
    (M.D. Ala. Mar. 17, 2017) .................................................................................... 12

*Van Horn v. Trickey,* 840 F.2d 604 (8th Cir. 1988)............................................................ 10, 19

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–57 (2011) .................................... 16

*West v. PSS World Med., Inc.,* No. 4:13-cv-574, 2014 WL 1648741
    (E.D. Mo. Apr. 24, 2014)................................................................................... 22

*White v. Nat'l Football League*, 822 F.Supp. 1389 (D. Minn. 1993) ............................................ 14

*White v. Nat'l Football League*, 836 F.Supp. 1458 (D. Minn. 1993) ........................................... 20

## OTHER AUTHORITIES

1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.5 at 247-8 (4th ed. 2002) ..... 13

4 Newberg on Class Actions, § 11.26 (4th ed. 2002) .................................................. 11

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) ................................................ 10, 11, 24

## RULES

Fed. R. Civ. P. 23 ...................................................................................... 12, 14, 23, 24
Fed. R. Civ. P. 23(a) ................................................................................... 12, 16
Fed. R. Civ. P. 23(a)(1) ...................................................................................... 13
Fed. R. Civ. P. 23(a)(2) ...................................................................................... 13
Fed. R. Civ. P. 23(a)(3) ...................................................................................... 14
Fed. R. Civ. P. 23(b)(3) .......................................................................... 12, 17, 24
Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 24
Fed. R. Civ. P. 23(e) .................................................................................... 10, 18
Fed. R. Civ. P. 23(e)(1) ...................................................................................... 24
Fed. R. Civ. P. 23(e)(2) .................................................................................. 10, 17
Fed. R. Civ. P. 23(e)(2)(A)-(D) ............................................................................. 18
Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) ......................................................................... 18

Plaintiffs Obed Gomez, Jr., Moses A. Gallens, Jeannie Melillo, Sharon Whitlock, Stephanie Martin, Karen Hughes, Tanya R. Autry, and Dennis Barfield ("Plaintiffs") submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

This case arises from two data breaches, which Plaintiffs allege compromised their and the putative Class's sensitive Private Information[1].

## II.    CASE SUMMARY

### A.    The Data Breaches

Defendant Centennial Bank d/b/a Happy State Bank ("Centennial" or "Defendant") is an Arkansas based commercial retail bank and related financial services company with locations throughout Arkansas, Florida, Alabama, Texas, and New York. In the course of operating its business, Defendant collects, maintains, and stores Private Information pertaining to its customers, including, but not limited to, name, address, date of birth, Social Security number, driver's license number, and financial account information.

On an unspecified date in July 2022, Defendant "became aware of unusual activity on the email account of an employee who is no longer with the company"[2]. Defendant "immediately began a review of the matter," and Defendant's review concluded that "[t]he individual's HSB email account was accessed without authorization between July 28th and 29th, 2022"[3] (the "2022 Data Incident"). According to Defendant's Notice of Security Incident letter (the "Notice Letter"),

---

[1] Unless otherwise noted, capitalized terms have the meaning attributed to them in the Settlement Agreement.

[2] the Notice Letter available at https://apps.web.maine.gov/online/aeviewer/ME/40/fe93a1a4-6d7c-4833-b110bc795599b539.shtml

[3] *Id.*

the compromised information included individuals' names, Social Security numbers, and financial account information.

On or around April 2023, another unauthorized party accessed Defendant's network and copied files within its network (the "2023 Data Incident" and together with the 2022 Data Incident, the "Data Incident"). According to Defendant's Notice of Security Incident letter (the "Notice Letter for Second Data Breach" collectively with the Notice Letter the "Notice Letters"), the compromised PII included individuals' names, Social Security numbers, financial account information, date of birth, and payment card number.

Centennial estimates that the Personal Information of 17,000 individuals was impacted in the 2022 Data Incident and the Personal Information of 955,000 individuals was impacted in the 2023 Data Incident. Joint Declaration of Gary M. Klinger and M. Anderson Berry in Support of Plaintiffs' Motion for Preliminary Approval of Class action Settlement ("Joint Decl.") ¶ 11 attached hereto as **Exhibit 2**.

B.    **Procedural Posture**

Following the 2022 Data Incident, Defendant was named was named in three class action lawsuits in various jurisdictions, which Plaintiffs' counsel then agreed to informally consolidate into a single action through dismissing two of the actions and amending the third to include the plaintiffs and allegations from the other two actions. Following the 2023 Data Incident, the Defendant was named an additional six class action lawsuits. Thereafter, Plaintiffs' counsel for all cases in the 2022 Data Incident and the 2023 Data Incident agreed to work together and collectively pursue their claims in a single action, and the cases were consolidated into the instant matter for discovery purposes on May 29, 2024. Plaintiffs' Second Amended Complaint (the "Operative Complaint") was filed on June 7, 2024. Prior to the actions being consolidated, Defendant filed a

Motion to Dismiss Plaintiffs Gomez, Gallo, and Melillos' First Amended Complaint, on May 10, 2024, which was denied without prejudice on June 14, 2024, at the request of the Parties pending settlement negotiations in this matter.

Throughout the pendency of the litigation the Parties discussed the possibility of settlement. Joint Decl. ¶ 9. In fact, prior to Defendant's announcement of the 2023 Data Incident the Parties participated in a day-long mediation session with the highly respected and experienced private mediator, Jill Sperber of Judicate West, on November 2, 2023. *Id.* While no settlement was reached at that time, the Parties continued to discuss settlement. *Id.* After filing the Second Amended Class Action Complaint, the Parties continued discussing settlement, this time for Plaintiffs claims relating to both Data Incidents and agreed to participate in a settlement conference before Hon. Joe J. Volpe, United States Magistrate Judge, which Judge Volpe set for September 23, 2024. ECF No. 38. In advance of the initial mediation and then again as part of the Settlement negotiations leading up to the scheduled Settlement Conference, Plaintiffs propounded informal discovery requests to determine key information necessary in order to reach a fair, reasonable, and adequate settlement. Through the provision of informal discovery, Plaintiffs were able to evaluate the merits of the Defendant's position. As the scheduled Settlement Conference approached the Parties continued to negotiate and on September 17, 2024 they reached a Settlement in principle and so informed the Court via email. Joint Decl. ¶ 9.

Over the next several months, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id.* ¶ 10. The Settlement Agreement was finalized and signed by the Parties in December, 2024, and Plaintiffs' now seek preliminary approval of the Agreement.

III.    **SUMMARY OF SETTLEMENT**

   A.    **Settlement Benefits**

The settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) reimbursement for documented losses; (2) a cash payment including an additional $50 payment for members of the 2022 Subclass; and (3) equitable relief in the form of information security enhancements. *See generally* Settlement Agreement attached hereto as **Exhibit 1** ("Agr."). The Settlement provides exceptional relief for the Settlement Class: it calls for the creation of a non-reversionary $5,200,000 cash fund to pay for monetary claims, attorneys' fees and costs, costs of settlement administration and Plaintiffs' service awards. *See* Agr. ¶ 71-72. Separate and apart from and in addition to the $5,200,000 made available, Centennial will implement extensive business practices changes and data security enhancements designed to safeguard the Private Information of Settlement Class Members. The costs of these enhancements is approximately $244,000 *Id.* ¶ 77. The Settlement provides for relief for a Settlement Class defined as:

> "all persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendant that their Private Information was potentially accessible as a result of the Data Incident."

Agr. ¶ 61. The Settlement Class includes a subclass of individuals which includes the 17,000 people impacted by the 2022 Data Incident (the "2022 Subclass"). *Id.* ¶ 68. Excluded from the Settlement Class are (a) all persons who are governing board members of the Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. *Id.* at ¶ 61.

### 1. Monetary Relief

The monetary relief provided for by the Settlement Agreement consists of (A) reimbursement for documented losses; or (B) a flat cash payment. Members of the 2022 Subclass are also eligible to claim a $50 cash payment in addition to options A or B.

### a. Documented Losses - Cash Payment A

Settlement Class Members may submit a claim for a cash payment for up to $4,000.00 per Settlement Cass Member upon presentment of documented losses related to the Data Incident. *Id.* ¶ 75(a). To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be treated as if he or she elected Cash Payment B.

### b. Flat Cash Payment – Cash Payment B

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $50.00. *Id.* ¶ 75(b).

### c. 2022 Subclass Payment – Cash Payment C

In addition to Cash Payment A or Cash Payment B, 2022 Subclass Settlement Class

Members may also elect to receive an additional $50.00. *Id.* ¶ 75(b).

Settlement Class Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. *Id.* ¶ 76.

### 2. *Equitable and Prospective Relief*

In addition to the monetary relief provided, Centennial has undertaken reasonable steps to further secure their systems and environments. *Id.* ¶ 77. Defendant represents that the amount of money spent on remediation efforts and security enhancements is approximately $244,000.00. *Id.*

### 3. *Release*

The release is tailored to the claims that have been plead or could have been plead in this case. Joint Decl. ¶ 21. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant and the Released Parties related to the Data Incident. *Id.*

### B.    The Notice and Claim Process

### 1. *Notice*

The Parties agreed to use Angeion, a nationally known and well-regarded Settlement Administration firm, as the Notice Specialist and Settlement Administrator in this case. Agr. ¶ 80. *See also* Declaration of Steven Weisbrot of Angeion Group re: Notice Plan & Angeion Group Qualifications ("Admin Decl.") attached hereto as **Exhibit 3**.

The Notice Plan provides for individual notice to be provided to Settlement Class Members directly via U.S. mail, to the Settlement Class's mailing addresses, to the extent known. Agr. ¶ 85. Within thirty (30) days of the date the Preliminary Approval Order is entered, the Settlement

Administrator will mail the Short Form Notice to Settlement Class Members. *Id.* ¶ 85. The Settlement Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, FAQs. *Id.* ¶ 87. The Settlement Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the Settlement. *Id.* ¶ 82(e).

### 2. Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Joint Decl. ¶ 23. Class Members will have until fifteen (15) days prior to the originally scheduled final approval hearing to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. Agr.  26. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. Joint Decl. ¶ 23, Agr. Ex. A.

### 3. Requests for Exclusion and Objections

Settlement Class Members will have up to and including thirty (30) days prior to the originally scheduled final approval hearing to object to or to submit a request for exclusion from the Settlement. Joint Decl. ¶ 23. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed forty-five (45) days prior to the originally scheduled final approval hearing. *Id*.

Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. *Id.* ¶ 23. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id*. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim. *Id*.

Any Settlement Class Member who wishes to object shall mail to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator a copy of the objection. *Agr.* ¶ 89. The objection to the Settlement Agreement must include; (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the

counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). *Id*. ¶ 90.

### C.    Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $3,000 per Plaintiff. *Id.* ¶ 108. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Joint Decl. ¶ 41.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs separate from the benefit to Class Members, in the amount of one third (33.33%) of the Settlement Fund for fees and up to $30,000 in costs. *Id.* ¶ 13.

Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.* ¶ 14.

## IV.    LEGAL AUTHORITY

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the Class—could hope to obtain. *See Cohn v. Nelson*, 375 F.Supp.2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)); *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.,* 921 F.2d 1371, 1383 (8th Cir. 1990) (same). Because cases like the one at issue here, if handled on an individual basis, would heavily tax the system and cause large and unwarranted expenditures of both public and private resources, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. "In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'" *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003) (quoting *Van Horn v. Trickey,* 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975)). "As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing." *Schoenbaum v. E. I. Dupont De Nemours Co.,* 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2008) (quoting Fed. R. Civ. P. 23(e)(2) (citing *Manual for Complex Litigation (Fourth)* § 21.632 (2004))).

At the first, or preliminary approval stage, trial courts typically first certify the class for settlement purposes, and then consider the fairness of the settlement. *Briles v. Turban,* No. 8:15CV241, 2016 WL 4094866, *5 (D. Nebr. Aug. 1, 2016), *citing* 4 Newberg on Class Actions, § 11.26. "[T]he 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum,* 2009 WL 4782082, at *2. If the Court finds preliminary approval is warranted, notice of the settlement will be disseminated to settlement class members who will have the opportunity to make a claim, object, or exclude themselves prior to the second—or final approval—stage of the settlement.

As set forth below, the proposed Settlement Class and Subclass warrant certification for settlement purposes. Because the Settlement terms fall with the "range of reasonableness" under both the revised Rule 23 and the factors typically considered by Eighth Circuit Courts, it should be preliminarily approved so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice approval or opposition.

## V.    LEGAL DISCUSSION

### A.    The Settlement Class Should be Preliminarily Approved.

Plaintiffs here seek certification of a Settlement Class consisting of "all persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendant that their Private Information was potentially accessible as a result of the Data Incident." with specific and limited exclusions. S.A. ¶ 61. The Settlement Agreement also provides for certification of a subclass consisting of the subset of the Settlement Class that includes the approximately 17,000 people impacted in the 2022 Data Incident. *Id.* ¶ 68. The *Manual for Complex Litigation (Fourth)* § 21.632 advises that in cases

presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria of Rule 23."

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis. *See e.g., Smith v. Triad of Ala., LLC,* No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017); *In re Target*, 309 F.R.D. 482

(D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case should be similarly certified.

   *1. The proposed Class is sufficiently numerous.*

   Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Chorosevic v. MetLife Choices*, 2007 WL 2159475, at *10 (E.D. Mo. July 26, 2007), *aff'd*, 600 F.3d 934 (8th Cir. 2010) (citing 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.5 at 247-8 (4th ed. 2002)). Here, the Parties have identified approximately 955,000 individuals whose data was impacted by the Data Incident. Joint Decl. ¶ 11. The enormous number of persons in the Settlement Class renders joinder impracticable. *See, e.g., Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (approving a class of several thousand claimants)); *International Union of Elec., Radio, & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (declaring that "at least several hundred" class members were sufficient); *Cooper Communities, Inc. v. Sarver*, 288 Ark. 6, 701 S.W.2d 364 (1986) (holding that 184 potential class members were enough). As such, the numerosity requirement is easily satisfied.

   *2. Questions of law and fact are common to the Class.*

   Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation even where the individuals are not identically situated. *White v. Nat'l Football League*, 822 F. Supp.

1389, 1403 (D. Minn. 1993) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citations and quotations omitted)).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Centennial failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. Centennial's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Centennial had a duty to use reasonable care to safeguard Plaintiffs' and Class Members' Private Information;

- Whether Centennial failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiffs and members of the Classes' Private Information from unauthorized release and disclosure; and

- Whether proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

These common questions, and others alleged by Plaintiffs in their operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

> 3. *Plaintiffs' claims and defenses are typical of the Class.*

"Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).

"The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citation omitted). A plaintiff can meet the typicality requirement by showing that the claims of the representatives and members of the class both stem from a single event. *Paxton v. Union Nat'l Bank*, 688 F.2d at 561.

Here, Plaintiffs and Settlement Class Members' claims all stem from the Data Incident that resulted in the exposure of their Private Information. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

> **4.** *Plaintiffs and their counsel will provide fair and adequate representation for the Class.*

Representative Plaintiffs must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the class representatives' interest is coextensive with and not antagonistic to those of the unnamed class members; and (2) the plaintiffs' counsel must be fully competent to prosecute the action as a class action. *Rentschler v. Carnahan*, 160 F.R.D. 114, 116–117 (E.D. Mo. 1995) (citing *Linquist v. Bowen,* 633 F. Supp. 846, 859 (W.D. Mo. 1986), *aff'd,* 813 F.2d 884 (8th Cir. 1987)).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same cash payment options. Moreover, each of their data will be more securely safeguarded in the future by the increased security protections Centennial has agreed to put into place.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Joint Decl. ¶¶ 26-40, Exs. 1-2. Thus, the requirements of Rule 23(a) are satisfied.

> 5. *Because common issues predominate over individualized ones, class treatment is superior.*

To show that common issue predominate, Plaintiffs must demonstrate that their claims can be proven on a systematic, class-wide basis. *Blades v. Monsanto Co.,* 400 F.3d 562, 569 (8th Cir. 2005); *see also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–57 (2011). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

In this case, the key predominating questions are whether Centennial had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiffs and the Settlement Class, and whether Centennial breached that duty. The common questions that arise from Centennial's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home*

*Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of hundreds of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating potentially nearly a million individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

### B.    The Settlement Terms Warrant Approval.

Under Rule 23(e)(2), in order to give a settlement approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A)

the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), The Eighth Circuit had developed its own factors for consideration on final approval including consideration of: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). Courts in the 8th Circuit continue to use these factors.

Courts recognize that a class action settlement is a private contract negotiated between the parties. *Id.* (citing *Christina A. ex rel. Jennifer A.,* 315 F.3d at 992). "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* Since the Settlement here is not the product of fraud or collusion, presents a resolution well within the range of acceptable outcomes, and is in fact a good result for Settlement Class Members, preliminary approval should be granted. *See,* 2009 WL 4782082, at *2.

A settlement agreement is "presumptively valid[,]" and the district court need not make a detailed investigation consonant with trying the case. *In re Wireless Tel. Fed. Cost Recovery Fees*

*Litig.*, 396 F.3d at 932 (citing *Van Horn,* 840 F.2d at 607 (citations omitted)). A district court must however provide a basis for determining that its decision rests on "well-reasoned conclusions" and is not "mere boilerplate." *Id.* "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* (quoting *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1150 (8th Cir.1999) (internal quotations omitted)).

The Settlement here falls with the range of possible approval in consideration of both the Rule 23 and Eighth Circuit factors. As such, preliminary approval is warranted.

### 1. *Class Representatives and Counsel have Adequately Represented the Class.*

As discussed at Section V(a)(iv), *supra,* the adequacy inquiry examines whether (1) the class representatives have common interests with the members of the class and (2) whether class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat. Bank,* 688 F.2d 552, 562-563 (8th Cir. 1982). Here, the Class Representatives, like all Class Members, have been victims of the same Data Incident, and thus have common interests with the Class. Moreover, they have ably represented the Class, maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Joint Decl. ¶ 42.

Proposed Class Counsel have also vigorously pursued the interests of the Class in securing a Settlement that brings immediate benefits to Class and Subclass Members while avoiding the risks of continued litigation. In doing so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged

during the course of their negotiations. Joint Decl. ¶¶ 4, 7, 15, 26-40. As such, this factor warrants preliminary approval.

   2. *The Settlement is the product of good-faith arms' length negotiations, and is absent of any collusion.*

  Here, the Settlement was reached only after months of arms' length negotiations between counsel for the Parties. Proposed Class Counsel conducted an extensive investigation into the merits of Plaintiffs' claims prior to filing their Complaint and were well positioned throughout settlement negotiations to have a full understanding of the value of Plaintiffs' and Class Members' claims. *See White v. Nat'l Football League*, 836 F. Supp. 1458, 1471 (D. Minn. 1993) (finding no evidence of collusion and concluding settlement was the result of arm's length negotiations); *Pollard v. Remington Arms Company, LLC*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) (finding a settlement reached after extensive investigation and discovery by class counsel was reached in good faith). As such, the Settlement was the product of good faith, non-collusive, and arm's length negotiations and should be approved.

   3. *The Settlement Agreement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits.*

  Most importantly, the Settlement guarantees Class Members real relief for harms and assurance that they are less likely to be subject to similar breaches due to Centennial's data security systems in the future. Thus, the third and most crucial factor weighs heavily in favor of preliminary approval.

  Settlement Class Members who submit valid claims are eligible to receive reimbursement for up to $4,000 in documented losses, or a flat cash payment of $50. 2022 Subclass Members can make a claim for an additional $50 payment. All of these payments are subject to upward or downward pro-ration to exhaust the Settlement Fund. Additionally, Centennial will be

implementing extensive security enhancement protocols that will guarantee that Settlement Class Members' Private Information will be better safeguarded in the future.

This Settlement's terms are consistent with agreements approved by Courts in other, similar data breach cases. *See e.g. Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Chacon et al, v. Nebraska Medicine,* No. 8:21-cv-00070 (Dist. Nebr.) (data breach settlement providing up to $300 in ordinary expense reimbursements; up to $3,000 in extraordinary expense reimbursements; credit monitoring services; and equitable relief in the form of data security enhancements); *Baksh et al. v. IvyRehab Network, Inc*., No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements).

Moreover, as will be discussed at length in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, the attorneys' fees agreed to here constitute 33.33% of the Settlement Fund, not including the significant value of the equitable relief implemented by Centennial, and reimbursement requested for actual litigation costs will not exceed $30,000. This sum is well within the range regularly approved by Eighth Circuit Courts. *Caligiuri v. Symantec Corp*., 855 F.3d at 865–66 (8th Cir. 2017); *see also In re Xcel Energy, Inc., Sec. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (8th Cir. 2002) (awarding 36% of a common fund of $3.5 million); *West v. PSS World*

*Med., Inc.,* No. 4:13-cv-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) (approving attorneys' fees of 33%); *Harris v. Republic Airlines, Inc.,* No. 4-88-1076, 1991 WL 238992 at *2 (D. Minn. Nov. 12, 1991) (awarding a sum slightly in excess of 30% of the common benefit).

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Centennial will assert a number of potentially case-dispositive defenses, and will certainly re-new their previously filed motion to dismiss. Even if Plaintiffs survive Centennial's motion to dismiss, they would still have to obtain and maintain class certification through trial. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses Centennial will likely assert—but it is obvious that Plaintiffs' success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### 4. The proposed Settlement treats Settlement Class Members equitably.

Here, the proposed Settlement does not improperly discriminate between Settlement Class Members. All Settlement Class Members are eligible to make a claim for the same amount of documented losses or a cash payment. While 2022 Subclass Members are eligible for $50 in additional benefits, such benefits stem from the additional exposure of their Private Information in two separate Data Incidents.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $3,000 award for their services on behalf

of the class, this award is *less than* the amount that any given Class Member can claim in reimbursements.

Accordingly, this factor also weighs in favor of preliminary approval.

> 5. *Other factors considered by Eighth Circuit Courts weigh in favor of preliminary approval.*

The factors considered by Eighth Circuit Courts prior to the amendment of Rule 23, and still considered by those Courts today, also weigh in favor of final approval.

<u>*First,*</u> the Settlement provides for significant relief in light of the risks of proceeding with further litigation. As discussed extensively in Section V(b)(iii), *supra*, while Plaintiffs are confident in the merits of their claims, they face significant risk in further litigation due in part to the constantly evolving nature of data breach litigation. Thus, this factor weighs in favor of preliminary approval.

<u>*Second,*</u> the Defendant's financial condition is not at issue here, and thus does not weigh either for or against approval of the Settlement.

<u>*Third,*</u> continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, the Plaintiffs anticipate incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiffs would have to face Defendant's renewed motion to dismiss. If Plaintiffs are successful at defeating that motion, Plaintiffs then would likely need to counter a motion for summary judgment, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled

. . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

*Fourth,* while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to the Class, and thus does not weigh either for or against preliminary approval of the Settlement.

Thus, these additional factors weigh in favor of approving a result exactly like that obtained by Plaintiffs and Class Counsel: significant cash reimbursements for all Settlement Class Members who submit valid claims and equitable relief in the form of increased data security safeguards, which will serve to better safeguard all Settlement Class Members' Private Information. Accordingly, the Settlement should be preliminarily approved.

### C.     The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* Agr. Exs B, D. Here, The Settlement Administrator will disseminate direct and individual notice, via first class mail to

Settlement Class Members. Not only will Settlement Class Members be provided with individualized notice via direct mail, but all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. Agr. ¶ 85. The Settlement Administrator will also make a toll-free telephone number available by which Settlement Class members can seek answers to questions or request a notice or claim form be mailed to them at their address. *Id.* ¶ 82(e).

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* Agr. Exs. B, D.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, reasonable, and adequate settlement that guarantees Settlement Class Members significant relief in the form of monetary compensation and equitable relief consisting of increased data security safeguards. For these and the above reasons, and for all

reasons for certification set forth above, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Date: December 13, 2024                                 Respectfully submitted,

*/s/ Christopher D. Jennings*
Christopher D. Jennings
(AR Bar No.: 2006306)
**JENNINGS PLLC**
PO Box 25972
Little Rock, AR 72221
P: 501-247-6267
E: chris@jenningspllc.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe St., Ste. 2100
Chicago, Illinois 60606
Phone: (866) 252-0878
*gklinger@milberg.com*

Philip J. Krzeski *
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

M. Anderson Berry*
Gregory Haroutunian*
**CLAYEO C. ARNOLD
A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

*\*Pro Hac Vice*