**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| Obed Gomez Jr., *et al.*, on behalf of themselves and all others similarly situated, | Case No. 4:23-cv-00333-LPR |
| Plaintiffs, | |
| v. | |
| Centennial Bank d/b/a Happy State Bank, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

i

# **TABLE OF CONTENTS**

Table of Authorities.................................................................................................. ii

I. Introduction ....................................................................................................... 1

II. Incorporation by Reference ............................................................................ 2

III. Summary of Action and Settlement ............................................................. 2
   A. Background........................................................................................... 2
   B. Terms of Settlement ............................................................................ 2

IV. Notice Program and Settlement Administration ......................................... 3

V. Settlement Class Satisfies the Requirements of Rule 23 and Should Be
   Certified for Settlement Purposes .................................................................. 6

VI. The Settlement is Fair, Reasonable, and Adequate and Should Be
   Approved ........................................................................................................ 6
   A. The Role of the Court in Determining Whether to Approve a
      Class Action Settlement...................................................................... 6
   B. Criteria to be Considered in Assessing Whether a Class Action Settlement
      is Fair, Reasonable, and Adequate ................................................... 8
   C. The Settlement Satisfies the Criteria for Final Approval............................ 9
      1. The Strength of Plaintiffs' Claims Against the Balanced Terms of
         Settlement................................................................................ 9
      2. Defendant's Financial Condition .......................................... 13
      3. The Complexity, Expense, and Likely Duration of the Litigation........... 13
      4. There is Minimal Opposition to the Settlement ..................... 14
      5. The Judgement of Experienced Counsel ............................... 18
      6. The Nature of Negotiations ................................................... 19
      7. The Stage of Proceedings and the Extent of Discovery ......... 20

VII. Conclusion.................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 980) ................................................................................................ 19

*Briles v. Tiburon Fin., LLC*, 2016 U.S. Dist. LEXIS 100249 (D. Neb. Aug. 1, 2016) ....... 9

*Burum v. Mankato State Univ.*, 2003 U.S. Dist LEXIS 5446 (D. Minn. Mar. 31, 2003) . 15

*Cochran v. Kroger Co.*, No. 5:21-cv-01187 (N.D. Cal.) ................................................ 10

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d, 1171 (8th Cir. 1995) .............................. 13, 15, 19

*Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97 (D. Mo. 1983) ........................................... 13

*Dryer v. Nat'l Football League*, 2013 WL 5888231 (D. Minn. Nov. 1, 2013) ............... 13

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ................................................................................ 7

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ......................... 7

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ................................. 7, 8

*Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) ................................................................................... 11, 16

*Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) ................ 11, 12

*In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .............. 14

*In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .............. 12

*In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) .................... 10, 15

*In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 50139 (W.D. Mo. May 10, 2011) .................................................................................. 9

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ................................................ 15

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) .................................................................................................... 19

*In re Employee Benefit Plans Sec. Litig.*, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) .............................................................................................................. 10

*In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417 (S.D. Iowa 2001) ............... 8, 9, 10, 15

*In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403 (S.D. Tex. 1999) ...................... 19

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993) ............. 11, 20

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................... 13

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ................................ 12

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 1013 (D. Minn. 2005) ........................................................................................................... 14

*Kloster v. McColl (In re Bankamerica Corp. Sec. Litig.)*, 350 F.3d 747 (8th Cir. 2003) ... 6

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987) ........... 19

*Mengelkoch v. Bemidji State Univ.*, 2002 U.S. Dist. LEXIS 308 (D. Minn. Jan. 8, 2002) ...................................................................................................... 15

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ...................................................... 9

*Nunez v. BAE Sys. San Diego Ship Repair Inc.,* 292 F. Supp. 3d 1018 (S.D. Cal. 2017) ...................................................................................................... 17

*Ortega v. Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013) ............................... 7, 8, 20

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ....................... 7, 9, 10, 13, 15

*Pollard v. Remington Arms Co., LLC*, 896 F.3d 900 (8th Cir. 2018) ............................... 16

*Rosado v. Ebay Inc.*, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ............................... 17

*Ryder v. Wells Fargo Bank, N.A.*, 2022 WL 223570 (S.D. Ohio Jan. 25, 2022) ............. 17

*Spencer v. Comserv Corp.*, 1986 U.S. Dist. LEXIS 15863 (D. Minn. Dec. 30, 1986) . 7, 19

*Stewart v. Rubin*, 948 F.Supp. 1077 (D.D. 1996) ............................................................. 20

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................. 12

*Summers v. Sea Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476 (2024) ........................... 16

*Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10271 (E.D. Mich.) ......................... 11

*Van Horn*, 840 F.2d at 607 ............................................................................................. 8

*Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .......... 20

*Weisenberger v. Ameritas Mut. Holding Co.*, 2024 WL 3903550 (D. Neb. Aug. 21, 2024) .................................................................................................. 16

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ................... 11, 12

*Zanghi v. Freightcar Am., Inc.*, 2016 WL 223721 (W.D. Pa. Jan. 19, 2016) ................... 13

## Other Authorities

*Manual for Complex Litigation* (3d ed. 2002) ................................................................... 7

*Moore's Federal Practice* (3d ed. 2002) ...................................................................... 7, 19

Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992) .............................. 7, 8, 10, 20

Plaintiffs Obed Gomez Jr., Moses A. Gallens, Jeannie Melillo, Sharon Whitlock, Stephanie Martin, Karen Hughes, Tanya R. Autry, and Dennis Barfield ("Plaintiffs") move for entry of an Order granting final approval of this proposed Class Action Settlement and certifying the Settlement Class.

For the reasons set forth below, Plaintiffs respectfully request that Court, after the final approval hearing scheduled for May 22, 2025, grant this Motion for Final Approval of Class Action Settlement, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service award to Plaintiffs (ECFs Nos 46 and 49), and enter a final judgment dismissing this case.

## I.    INTRODUCTION

Plaintiffs, by and through Class Counsel,[1] on behalf of themselves and the Settlement Class[2], respectfully submit this Memorandum of Law in support of their Motion pursuant to Federal Rule of Civil Procedure ("Rule 23") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement ("S.A") (ECF No. 46-1) and for the certification of the Settlement Class.

If approved, the Settlement will successfully resolve the claims of approximately 942,108 individuals nationwide who were notified of two separate security incidents that Defendant Centennial Bank d/b/a Happy State Bank ("Defendant") experienced on or

---

[1] The Court appointed (1) M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation; (2) Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; and (3) Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel.

[2] All capitalized terms herein shall have the same meanings as those ascribed to them in the Settlement Agreement (ECF No. 46-1).

about July 28th and 29th 2022 (the "2022 Data Incident") and in or around April 2023 (the "2023 Data Incident", together with the 2022 Data Incident, the "Security Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $5,200,000 ("Settlement Fund") for the benefit of eligible Class Members. Defendant has also committed to enhanced data security practices to protect Class Members' Private Information. S.A., ¶ 77.

## II.    INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference the Memorandum in support of the Unopposed Motion for Preliminary Approval of Class Settlement (ECF No. 46) ("Motion for Preliminary Settlement"), the Memorandum in support of Attorneys' Fees, Reimbursement of Expenses, and Service Award (ECF No. 49), and associated declarations and exhibits.

## III.    SUMMARY OF ACTION AND SETTLEMENT

### A.  Background

Plaintiffs provide the factual background, procedural background, and history of negotiations in § II in the Motion for Preliminary Approval. ECF No. 46-1, PAGEID 7-9.

### B.  Terms of the Settlement

Plaintiffs detail the settlement benefits in § III in the Motion for Preliminary Approval. *Id*., PAGEID 10-12.

## IV.    NOTICE PROGRAM AND SETTLEMENT ADMINISTRATION

The Court granted preliminary approval on January 22, 2025 (ECF No. 47) and found "I preliminarily approve the Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate to the Settlement Class." *Id*., PAGEID 3. "For preliminary approval, [the Court] found the proposed settlement is fair, reasonable, and adequate." *Id.*

On December 23, 2024, pursuant to 28 U.S.C. §1715, Angeion caused notice of this Settlement and related materials ("CAFA Notice") to be sent to the Attorneys General of all U.S. States and Territories, as well as the Attorney General of the United States. *See* Declaration Katrina R. Ashley Regarding Implementation of Notice and Settlement Administration ("Admin Decl."), ¶ 5. On or about January 24, 2025, Angeion received from Defendant's Counsel a data file containing 989,611 Settlement Class Member records. *Id.*, ¶ 6. The records included the names and mailing addresses of Settlement Class Members. *Id*. Angeion reviewed the data file and removed duplicative records, resulting in 942,108 Settlement Class Member unique records ("Class List"). *Id*.

On February 21, 2025, Angeion caused the Postcard Notice to be mailed via the United States Postal Service ("USPS") first class mail, postage prepaid, to 942,108 Settlement Class Members. *Id*., ¶ 7. Prior to mailing, the Settlement Class Member mailing addresses were processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. *Id*., ¶ 8. Postcard Notices were returned by the USPS as undeliverable with a forwarding address and were re-mailed to that

3

forwarding address. *Id.*, ¶ 9. Postcard Notices that were returned by the USPS without a forwarding address and were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. *Id.* As a result of the above-described efforts, of the 177,801 Postcard Notices were returned as undeliverable, 139,456 were re-mailed to updated addresses. *Id.* As of the date of this Declaration, Angeion estimates that approximately 903,763 of the 942,108 unique Settlement Class Members on the Class received Notice via mail. *Id.* Based on this information, Angeion estimates that approximately 95.93% of the Settlement Class received notice of the settlement via mail. *Id.*

On February 20, 2025, Angeion activated the case-specific website dedicated to this Settlement: **www.CentennialBankDataSettlement.com** (the "Settlement Website"). *Id.*, ¶ 10. The Settlement Website was designed to be user-friendly and make it easy for Settlement Class Members to view general information about this class action Settlement, including answers to frequently asked questions, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id.* Settlement Class Members were able to submit a Claim Form via the Settlement Website's secure online claim portal or download and print a Claim Form to be completed returned by mail. *Id.* The Settlement Website also includes a "Contact Us" page whereby Settlement Class Members can send a message with any additional questions to a dedicated email address, info@centennialbakdatasettlement.com. *Id.*

As of April 28, 2025, this Settlement Website has received 27,759 website visits by 19,825 unique users totaling 59,015 pageviews. *Id.*, ¶ 11. On February 20, 2025, Angeion

4

activated the following toll-free number dedicated to this Settlement: 1-877-711-4078. *Id.,* ¶ 12. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* This hotline is accessible 24 hours a day, 7 days a week. *Id.*  As of the date of this declaration, Angeion has received 429 calls totaling 1,726 minutes. *Id.*, ¶ 13.

The deadline for Settlement Class Members to submit a Claim Form is May 6, 2025. *Id.*, ¶ 14. As of April 28, 2025, Angeion has received 22,087 Claim Form submissions, representing 2.3% of the Settlement Class ((22,087/942,108) * 100). *Id.* These Claim Form submissions are still subject to final audits, including the full assessment of each claim's validity and a review for duplicate submissions. *Id.* Angeion will continue to report to the Parties the number of Claim Form submissions it receives and processes. *Id.*

The deadline for Settlement Class Members to request exclusion from the Settlement was April 7, 2025. *Id.*, ¶ 15. As of the date of this declaration, Angeion has received fifty-one (51) timely exclusion requests. *Id.* The deadline for Settlement Class Members to submit an objection to the Settlement was April 7, 2025.  *Id.*, ¶ 16. As of the date of this declaration, Angeion has received three (3) objections. *Id.*

Based on the current claims rate, Class Counsel and Angeion estimate that Settlement Class Members who submit claim forms will receive $128.66, with the 17,000 Settlement Class Members impacted by the 2022 Data Incident ("2022 Subclass") receiving an additional $50.00. This a significant upward deviation of the $50.00 flat cash payments set by the Settlement Agreement before *pro rata* adjustment.

## V.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Court found, at preliminary approval, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy. *See* ECF No. 49, PAGEID 2.

Nothing has changed since this initial determination. For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A. The Role of the Court in Determining Whether to Approve a Class Action Settlement

"Under Rule 23(e), the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Kloster v. McColl (In re Bankamerica Corp. Sec. Litig.)*, 350 F.3d 747, 751 (8th Cir. 2003) (quoting *Grunin v. Int'l House of Pancakes*, 513

F.2d 114, 123 (8th Cir. 1975)). Because settlements are the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, many courts afford a presumption of fairness when the settlement is reached following arm's-length negotiations. *Manual for Complex Litigation*, § 30.43 at 289 (3d ed. 2002); Newberg & Conte, *Newberg on Class Actions*, § 11.42 (3d ed. 1992) ("[A]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 3B *Moore's Federal Practice* ¶ 23.1.24[2] (2d ed. 1992). Indeed, courts in the Eighth Circuit recognize an initial presumption that the compromise is fair and reasonable. *See Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is 'presumptively valid.'") (citation omitted); *Spencer v. Comserv Corp.*, No. 4-84-794, *et al.*, 1986 U.S. Dist. LEXIS 15863, at *15-*16 (D. Minn. Dec. 30, 1986).

Courts in the Eighth Circuit also recognize the overarching principle that the Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999)). As the Supreme Court explained: "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed. . . . The options available to the District Court [are] accept[] the proposed settlement[,] reject [it] . . . or . . . try the case." *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). In this case, the Court has already

granted preliminary approval of the Settlement. This preliminary determination establishes an initial presumption that the settlement was negotiated at arm's length and that the settlement is reasonable, fair and adequate. *See* Newberg & Conte, *Newberg on Class Actions*, § 11.41, at 11-91.

As detailed in the Motion for Preliminary Approval (pp. 8-9), the Settlement was negotiated by fully informed and experienced counsel after extensive discovery into each side's respective position. Throughout the settlement discussions, Plaintiffs' Counsel and counsel for Defendant each vigorously advanced their respective claims and defenses. Thus, no doubt exists that this Settlement is entitled to a presumption of fairness.

### B. Criteria to be Considered in Assessing Whether a Class Action Settlement is Fair, Reasonable, and Adequate.

The factors for determining whether a settlement is fair, reasonable, and adequate, and warrants final approval are set forth in *Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975). The *Grunin* factors are as follows: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement; (2) the defendant's overall financial condition and ability to pay; (3) the complexity, length, and expense of further litigation; and (4) the amount of opposition to the settlement. *Grunin*, 513 F.2d at 124; *see also Uponor*, 716 F.3d at 1063; *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 422 (S.D. Iowa 2001).

In addition, courts in the Eighth Circuit usually consider three additional factors: (1) the experience of counsel; (2) the negotiation process; and (3) the extent of discovery and stage of the proceedings. *See Van Horn*, 840 F.2d at 607. It is well-established, however,

that "[t]he most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Eng'g Animation*, 203 F.R.D. at 422 (quoting *Petrovic*, 200 F.3d at 1150). In this regard, the "reasonableness" of a settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *cf. Briles v. Tiburon Fin., LLC*, Case No. 8:15CV241, 2016 U.S. Dist. LEXIS 100249, at *2 (D. Neb. Aug. 1, 2016); *In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, 2011 U.S. Dist. LEXIS 50139, at *47 (W.D. Mo. May 10, 2011).

The Settlement proposed in this case clearly falls within the "range of reasonableness" and satisfies the criteria for final approval in the federal Eighth Circuit. Indeed, in the judgment of Plaintiffs' Counsel, there is serious doubt that a more favorable result could have been obtained if this case were litigated through trial and the inevitable post-trial motions and appeals. As such, the Settlement clearly satisfies the relevant factors, set forth above, thereby warranting this Court's approval.

**C.  The Settlement Satisfies the Criteria for Final Approval**

**1.  The Strength of Plaintiffs' Case Against the Balanced Terms of Settlement**

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiffs' case against the terms of the settlement." *In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D.

Mo. 2002); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. at 422 ("[t]he most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" (quoting *Petrovic*, 200 F.3d at 1150)). In assessing the Settlement, the Court must weigh the strength of plaintiffs' case on the merits considering the uncertainties of fact and law against the immediacy and certainty of the money offered in the settlement and the potential recovery by the class. *See* Newberg & Conte, *Newberg on Class Actions* § 11.44 at 121-27 (4th ed. 2002). The Court's analysis of the benefits of the settlement need only be a rough approximation of risks of continued litigation rather than an attempt to reach conclusions as to the merits of the case:

> In evaluating this factor, the Court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the Court substitute its opinion for that of plaintiffs' counsel and members of the class… rather, the determination herein generally will not go beyond "an amalgam of delicate balancing, gross approximation, and rough justice." *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *13 (D. Minn. June 2, 1993) (citations omitted).

The Settlement terms (i.e., *pro rata* cash payments and reimbursement of out-of-pocket expenses up to $4,000) falls within the "range of reasonableness." This represents a substantial result for the Settlement Class Members based upon the claims and Defendant's defenses. As an example, under the average-value-per-class member metric, the Settlement provides a $5.52 per class member, which is at or exceeds settlement figures for similar class sizes in data breach actions. *See, e.g., Cochran v. Kroger Co.*, No. 5:21-cv-01187 (N.D. Cal.) (average settlement value of $1.31 for class size of approximately

10

3,825,000 individuals); *Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10271 (E.D. Mich.) (average settlement value of $6.19 for class size of approximately 695,000 individuals); *Hightower v. Receivables Performance, LLC*, No. 2:22-cv-01683 (W.D. Wash.) (average settlement value of $1.51 for class size of approximately 3,700,000 individuals).

While Plaintiffs have calculated the maximum value of their claims to be a figure larger than the settlement amount, when the maximum value of Plaintiffs' and the Class's claims are discounted by the identifiable risks, including Defendant's defenses, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1413 (D. Minn. 1987) (recognizing that a settlement valuation based on the optimal amount a class could recover is inappropriate and a settlement just needs to be reasonable, adequate, and fair); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for Class Members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success"). More particularly, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of

further litigation. *See Holden*, 665 F. Supp. at 1413-14 (noting that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case).

In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against Defendant is uncertain. As set forth above, Defendant has vigorously denied Plaintiffs' allegations of wrongdoing. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Specifically, Defendant has asserted significant defenses against which Plaintiffs would be required to prevail in motions for summary judgment and class certification.

Even if Plaintiffs had successfully obtained class certification and this matter had continued to trial, it is impossible to predict with any certainty whether the jury or this Court would find favor with the Plaintiffs' allegations or with the Defendant's defenses. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial regarding the corporate defendant. *Id.*

Considering the foregoing, the benefits conferred by the Settlement are within the range of reasonableness. Thus, final approval of the proposed Settlement should be granted.

### 2. Defendant's Financial Condition

The defendant's financial condition is often considered neutral when, as here, the Defendant's ability to pay is not an issue. *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *4 (D. Minn. Nov. 1, 2013). "However, just because defendants could pay more does not necessarily mean they should have to pay more than the parties negotiated to settle these claims." *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, 2016 WL 223721, at *19 (W.D. Pa. Jan. 19, 2016). Because the settlement is appropriate on the merits of the case and is not reduced to account for any collectability concerns, the Parties did not evaluate Defendant's solvency. Thus, this is a neutral factor.

### 3. The Complexity, Expense, and Likely Duration of the Litigation

Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97, 100 (D. Mo. 1983) (settlement approved where "further litigation in this action would have been lengthy, complex, and expensive"); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (settlement serves laudable goal of eliminating costs and time attendant to continued litigation) (citation omitted). The Eighth Circuit also recognizes that the ability to avoid delay and expense, and reap the benefits of settlement sooner, rather than later, weighs heavily in favor of approving a settlement. *See, e.g., Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d, 1171, 1177 (8th Cir. 1995).

As set forth above, Defendant raised numerous defenses to the claims advanced by Plaintiffs and the Class. Thus, continued litigation of this Action would undoubtedly add considerable expense and time to this litigation. Moreover, Defendant would have vigorously contested any motion seeking certification of a class in this matter. An unfavorable ruling for Defendant at the class certification stage would have likely resulted in an appeal pursuant to Rule 23(f), further lengthening and complicating this matter. Thus, because this case is settling prior to the resolution of motions for class certification and summary judgment, and prior to completion of expert discovery and trial preparation, there is no question that continued litigation would greatly increase the expense and duration of this matter.

Moreover, the delay through trial, post-trial motions and the appellate process could deny the Class any recovery for years and add substantial time and costs to the litigation. *See In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the Class and weighed in favor of final approval); *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 U.S. Dist. LEXIS 68, at *22 (E.D. Pa. Jan. 4, 2001) (risk of delay could have deleterious effects on future recovery). Avoiding these unnecessary expenditures of time and resources clearly benefits all Parties and the Court.

### 4.  There is Minimal of Opposition to the Settlement

The number of class members who opt out of a class or who object to a settlement is relevant, though not conclusive, to whether the settlement is reasonable. *See Petrovic*,

200 F.3d at 1152 (identifying "the amount of opposition to the settlement" as a factor for the court to consider in approving a settlement agreement); *DeBoer*, 64 F.3d at 1178 (same). The reaction of the Class underscores the propriety of the Settlement and assures that this Court should approve the Settlement.

Pursuant to the Preliminary Approval Order, copies of the Notice were mailed to approximately 942,000 potential Class Members. Admin Decl., ¶ 6. As of April 29, 2025, only 51 class members have requested exclusion and only three have objected. *See id.*, ¶ ¶ 16-17. The minimal number of objections to the Settlement constitutes further support that the Settlement is fair, reasonable, adequate, and in the best interest of the Class. *See In re Eng'g Animation Sec. Litig.*, 203 F.R.D. at 422 ("[T]he Court notes there was minimal opposition to this settlement. This weighs in favor of finding it fair."); *see also Mengelkoch v. Bemidji State Univ.*, No. 99-1383 DWF/RLE, 2002 U.S. Dist. LEXIS 308, at *3 (D. Minn. Jan. 8, 2002) (where only three objections were filed, the court approved settlement of class action); *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d at 750 (settlement determined to be fair and reasonable where there were ten objections out of "the hundreds of thousands of eligible class members"); *Burum v. Mankato State Univ.*, No. 98-696 DWF/RLE, 2003 U.S. Dist LEXIS 5446, at *3 (D. Minn. Mar. 31, 2003) (where only one objection filed, the court approved settlement of class action alleging gender-based discrimination); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice and the number of objectors creates a strong presumption . . . in favor of the Settlement . . .").

15

The claims rate to date is 2.3%, which represents a very high participation rate in the Data Breach context. *See, e.g.*, *Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with 0.65% claims rate); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 at *3 (D. Neb. Aug. 21, 2024) (finding parties efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims); *Summers v. Sea Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476, 486 (2024) (finding trial court did not abuse its discretion in approving data breach settlement with 0.5% claims rate given that it considered the potential difficulty in reaching class members and the provision of *cy pres* relief.); *see also Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 905–06 (8th Cir. 2018) (finding district court did not abuse its discretion in approving settlement with 0.29% claims rate in non-data breach class action).

Each of the three (3) objections that were made to the settlement can be summarized as objecting to the amount of their individual monetary recovery from the Settlement, or to the total amount of the Settlement.[3] None of them provide specific evidence to support these claims. Courts routinely reject such unsupported objections. In *Ryder v. Wells Fargo*

---

[3] Specifically, Class Member Paris Nelson asserts that "I deserve more" than $4[,]000, and claims to be suing for $10,000,200. Class Member Heather Rodriguez (formerly Heather Robinson) objects on the basis that "offering $50 or less for their [Defendant's] blatant disregard for their duty to protect my information is wholly inadequate." And Class Member Arthur Heathcock states that "the amount of this settlement is so low as to be meaningless to the bank, whose assets are over 22 billion" and that the amount shared by the Class Members will be "an insult." For the Court's ready access to the actual objections, they are all attached to the Angeion Declaration as part of Exhibit D.

*Bank, N.A.*, the court overruled an objection that individual payments were too low because the objector had the ability to opt out of the settlement and "provided no evidence to support a higher payment." No. 1:19-cv-638, 2022 WL 223570, at \*2 (S.D. Ohio Jan. 25, 2022). Similarly, in *Rosado v. Ebay Inc.*, the court noted that "[i]f the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant. No. 5:12-cv-4005, 2016 WL 3401987, at \*9 (N.D. Cal. June 21, 2016). The court in *Nunez v. BAE Sys. San Diego Ship Repair Inc.* likewise found an objection unpersuasive because "the class member was free to opt out if he or she believed that the settlement amount was too low." 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017).

Each of the three (3) objections that was made to the settlement can be summarized as objecting to the size of the monetary value of the Settlement. None of them provide specific evidence to support these claims. Courts routinely reject such unsupported objections. In *Ryder v. Wells Fargo Bank, N.A.*, the court overruled an objection that individual payments were too low because the objector had the ability to opt out of the settlement and "provided no evidence to support a higher payment." No. 1:19-cv-638, 2022 WL 223570, at \*2 (S.D. Ohio Jan. 25, 2022). Similarly, in *Rosado v. Ebay Inc.*, the court noted that "[i]f the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant. No. 5:12-cv-4005, 2016 WL 3401987, at \*9 (N.D. Cal. June 21, 2016). The court in *Nunez v. BAE Sys. San Diego Ship Repair Inc.* likewise found an

objection unpersuasive because "the class member was free to opt out if he or she believed that the settlement amount was too low." 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017).

Courts consistently recognize that settlements by their nature are compromises, meaning parties do not obtain their full recovery. *Abadilla v. Precigen, Inc.*, the court overruled an objection that the settlement amount was too low, noting that "a settlement generally requires a level of compromise under which litigants receive a certain recovery less than the full amount of their losses." No. 20-cv-6936, 2023 WL 7305053, at *13 (N.D. Cal. Nov. 6, 2023). Similarly, in *Free Range Content, Inc. v. Google, LLC*, the court observed that "every litigant hopes to recover the full amount of his losses, . . . the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery." No. 14-cv-2329, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019). And in *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, the court noted that an objector claiming a settlement is too low "might be right, but that's the nature of settlements: if a settlement had to produce full compensation for everything a plaintiff lost, no defendant would settle. A settlement is, by its nature, a compromise." No. 3:05-MD-527, 2017 WL 1735578, at *3 (N.D. Ind. Apr. 28, 2017).

On this basis, the Court should overrule the three objections, and find this factor weighs in favor of the proposed settlement.

### 5. The Judgment of Experienced Counsel

The view of experienced counsel favoring the settlement is accorded "deference" in appraising the fairness and adequacy of a proposed settlement. *DeBoer*, 64 F.3d at

18

1178 (views of experienced counsel "are to be accorded deference"); *Spencer*, 1986 U.S. Dist. LEXIS 15863, at \*25 ("Where experienced counsel have engaged in arm's-length negotiations to reach a settlement, the trial court is entitled to rely on their judgment") (citation omitted). Here, both sides were represented by counsel with substantial experience in complex class action litigation, and specifically in data breach class actions. Based on their experience and knowledge, counsel for both Parties firmly believe that the proposed Settlement is fair, reasonable and adequate. "The greater experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, adequacy, and reasonableness." *Moore's Federal Practice*, 23.85[2] (3d ed. 2002).

### 6. The Nature of Negotiations

In examining the fairness of a proposed settlement, the negotiations leading to settlement may also be examined. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987) (in approving a settlement, court must assure that negotiations were non-collusive); *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). In considering settlements of class actions, the arm's-length nature of negotiations and the lack of any indicia of fraud or collusion weigh in favor of court approval. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) (stating that the "recommendation of experienced counsel is entitled to great weight"); *see also In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 424-25 (S.D. Tex. 1999) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (citations omitted)); *Stewart v. Rubin*, 948 F.Supp. 1077, 1087 (D.D.

1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (same); *In re Milkin & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (same). "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg & Conte, *Newberg on Class Actions*, § 11.51 (3d ed. 1992). As a result, a proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable. *See Uponor*, 716 F.3d at 1063; *Weeks v. Kellogg Co.*, Case No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *44 (C.D. Cal. Nov. 23, 2011).

Here, the settlement negotiations were at arm's-length and without collusion. Indeed, the Settlement was reached only after the Parties' respective counsel conducted an extensive factual investigation into the alleged misconduct, thoroughly researched the law pertinent to the Class's claims and Defendant's defenses, gathered, reviewed, and analyzed documents submitted by the opposing party, and participated in settlement negotiations, meaning each side had a wealth of information at their disposal before entering the Settlement. As such, the Parties were fully informed throughout the process, which allowed their respective counsel to adequately assess the strengths and weaknesses of the case and balance the benefits of settlement against the risks of further litigation. Accordingly, this factor militates in favor of approving the proposed Settlement.

### 7. The Stage of Proceedings and Extent of Discovery

The volume and substance of the Parties' knowledge of this case are unquestionably adequate to support approval of the Settlement. As stated in Newberg & Conte, *Newberg on Class Actions*, § 11.45 (3d ed. 1992):

[T]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture.

As previously noted, the Settlement was reached only after each side conducted its own factual investigation into the alleged misconduct, exchanged informal discovery, and thoroughly researched the law applicable to the Class's claims and the Defendant's defenses. Moreover, the negotiations were further informed by the Parties' exchange of information related to class size and damages issues and the assistance of a trained, neutral mediator. Consequently, the Parties had sufficient information to adequately assess the strengths and weaknesses of the case and balance the benefits of settlement against the risks of further litigation.

Accordingly, the extent of investigation completed, and the stage of the proceedings weigh in favor of final approval of the Settlement.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order: (1) granting final certification of the proposed Settlement Class; (2) granting final approval of the proposed Settlement; (3) finding that notice has been conducted in accordance with the Court-approved notice plan and due process; and (4) dismissing with prejudice Plaintiff's and Class Members' claims against Defendant.

Dated:  May 8, 2025                    Respectfully Submitted,

                                       /s/ *Philip J. Krzeski*
                                       Bryan L. Bleichner (*pro hac vice* forthcoming)
                                       Philip J. Krzeski *
                                       **CHESTNUT CAMBRONNE PA**
                                       100 Washington Avenue South, Suite 1700
                                       Minneapolis, MN 55401
                                       Telephone: (612) 339-7300
                                       Fax: (612) 336-2940
                                       *bbleichner@chestnutcambronne.com*
                                       *pkrzeski@chestnutcambronne.com*

                                       Christopher D. Jennings (AR Bar No. 2006306)
                                       **JENNINGS PLLC**
                                       PO Box 25972
                                       Little Rock, AR 72221
                                       Telephone: 501-247-6267
                                       *chris@jenningspllc.com*

                                       Gary M. Klinger*
                                       **MILBERG COLEMAN BRYSON**
                                       **PHILLIPS GROSSMAN PLLC**
                                       227 W. Monroe St., Ste. 2100
                                       Chicago, Illinois 60606
                                       Telephone: (866) 252-0878
                                       *gklinger@milberg.com*

                                       M. Anderson Berry*
                                       Gregory Haroutunian*
                                       **CLAYEO C. ARNOLD**
                                       **A PROFESSIONAL CORPORATION**
                                       865 Howe Avenue
                                       Sacramento, CA 95825
                                       Telephone: (916) 239-4778
                                       *aberry@justice4you.com*
                                       *gharoutunian@justice4you.com*

                                        * Admitted *Pro Hac Vice*

                                       ***Attorneys for Plaintiffs and the Putative***
                                       ***Classes***

22

## <u>CERTIFICATE OF SERVICE</u>

Plaintiffs' Counsel avers that a paper copy of this document was served via First-Class Mail on each of the individuals listed below:

Heather Rodriguez
f/k/a Heather Robinson
1030 W. Garza St.
Slaton, Texas 79364

Arthur Harold Heathcock
520 Mill Creek Dr.
Russellville, AR 72802

Paris Nelson
2815 Arch St.
Little Rock. AR 72206

/s/ Philip J. Krzeski
Philip J. Krzeski

23